J-S43009-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LONNIE MOORE | : | |
| | : | |
| Appellant | : | No. 50 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 23, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003014-2023

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY KUNSELMAN, J.: **FILED FEBRUARY 13, 2026**

Lonnie Moore appeals from the judgment of sentence imposed after a jury found him guilty of multiple offenses, including burglary and criminal trespass.[1] He claims the verdicts for these offenses were against the weight of the evidence and his sentence was illegal because the court considered his arrest record. Upon review, we affirm.

The trial court set forth the facts as follows:

During the evening of March 5, 2023, Annette Johnson was at her home in Philadelphia, where she resided with her 18-year-old son. At around 6:00 or 7:00 p.m., [Moore] called Ms. Johnson saying that he was hungry and wanted something to eat. Ms. Johnson responded by inviting [Moore] to her house for dinner. Although [Moore] and Ms. Johnson had previously dated on and off between 2017 and 2022, they were no longer in a romantic relationship at that time. [Moore] came over, ate dinner, watched some

_____

[1] 18 Pa.C.S.A. §§ 3502(a)(1)(i) and 3503(a)(1)(ii).

television with Ms. Johnson, and [Moore] then left the home at around 8:00 p.m.

[A]round midnight that evening, as Ms. Johnson was getting ready for bed, she began receiving phone calls from [Moore]. Given the late hour, Ms. Johnson ignored the calls, but then she began receiving text messages from [him]. A message from [Moore] sent at 12:46 a.m. stated, "Oh know [sic] you don't want too [sic] answer." [Moore] and Ms. Johnson proceeded to exchange a series of quarrelsome text messages, and at 1:09 a.m., Ms. Johnson texted [Moore] "you are my problem" and "you will not [go] away."

At 1:09 a.m., [Moore] texted Ms. Johnson, "I'm on my way around," to which Ms. Johnson responded, "[G]o away." [Moore] answered, "Then u will have problems." Ms. Johnson interpreted [Moore's] messages to mean that [he] was coming to [her] house to start trouble.

Ms. Johnson texted [Moore] at 1:10 a.m. "Lonnie I will NOT upset my son" because [she] was concerned for her son's safety. Ms. Johnson texted [Moore] at 1:11 a.m. "police involved that was always your wish," "I'm not going anywhere," and "911." Ms. Johnson texted [Moore] "911" because she wanted [him] to go away. [Moore] then responded, "U know better," which Ms. Johnson interpreted as a threat.

Ms. Johnson again texted defendant "911" at 1:11 a.m., indicating that she would call the police because she was upset and was a single mom living with just her son. [Moore] responded with the messages, "Cool," "8401," and "If u think I care about 911 u don't know me." "8401" was the house number for Ms. Johnson's street address. Ms. Johnson believed that [Moore] did not care about potential police involvement and that [he] was threatening her to the point that "[she] could lose [her] life that quickly" and that his texts were "a real bad threat."

After receiving [Moore's] last text message, Ms. Johnson called Ms. Sissy, an older woman who lived on [Moore's] block and whom [he] referred to as "mom." Ms. Johnson thought Ms. Sissy might be able to call [Moore] and calm him down. While speaking with Ms. Sissy, Ms. Johnson went outside her front door so that her son would not hear their conversation and become scared. [As Ms. Johnson] exited the house, she saw [Moore] standing outside with a rifle sticking out from under his coat. [Moore] grabbed Ms. Johnson's arm and pushed her back into the house.

Ms. Johnson testified that [Moore] put the gun into Ms. Johnson's chest as she held her hands up while standing in the middle of the living room. As Ms. Johnson yelled for [Moore] to stop, [her] son started running down the steps from upstairs. Ms. Johnson's son saw [Moore] grabbing [his mother]. [Moore] then said to Ms. Johnson, "If your son come down here I'mma blow his fucking head off." Ms. Johnson told her son to go back upstairs. Her son then went upstairs and immediately called 911.

After Ms. Johnson's son went back upstairs, [Moore] moved his hand from Ms. Johnson's arm to her neck. Ms. Johnson testified that [Moore] grabbed her neck and began choking her. Ms. Johnson continued moving backwards into the house's dining room and told [Moore] to stop and that he was hurting her. Ms. Sissy, who was still on the phone, was able to hear the commotion and told [Moore] to leave Ms. Johnson alone. [Moore] appeared stunned to hear Ms. Sissy's voice on the phone, and [he] then let go of Ms. Johnson. [Moore] grabbed Ms. Johnson's phone and began telling Ms. Sissy to mind her business as he exited the house. After [Moore] went outside, he turned around and threw Ms. Johnson's phone back towards the house. [Moore] then left the scene just as a police car was arriving.

As a result of her encounter with [Moore], Ms. Johnson sustained bruises on her arm, and her upper neck had become red, sore, and swollen.

Trial Court Opinion, 2/21/25, at 2-5 (citations omitted). Moore was arrested and charged with multiple offenses.

On March 15, 2024, a jury convicted Moore of burglary, criminal trespass, terroristic threats, and simple assault. The jury acquitted Moore of strangulation and possession of an instrument of crime ("PIC").[2]

On August 23, 2024, the trial court sentenced Moore to 6 ½ to 13 years' incarceration, followed by four years' probation. Moore filed a post-sentence motion, which the court denied.

_____

[2] Other charges were *nolle prossed* or discharged.

Moore filed this timely appeal. He and the trial court complied with Appellate Rule 1925.

Moore raises the following two issues on appeal:

1. Did the trial court err and abuse its discretion by denying [] Moore's request for a new trial on the charges of burglary and criminal trespass, where the verdicts on those charges were against the weight of the evidence, which consisted entirely of the complainant's contradictory and unreliable testimony?

2. Did the trial court err and impose an illegal sentence by considering [] Moore's prior arrests that did not result in adjudication or conviction in fashioning its sentence?

Moore's Brief at 3.

In his first issue, Moore claims that the trial court erred in concluding that the verdicts for burglary and criminal trespass were not against the weight of the evidence, thereby denying his motion for a new trial. Specifically, Moore argues that the only evidence that he entered Ms. Johnson's house without permission was her own incredible and inconsistent testimony. First, Moore maintains that because the jury found Ms. Johnson incredible and acquitted him of other offenses, her testimony regarding burglary and criminal trespass was likewise incredible. Moore further maintains that Ms. Johnson's recitation of the circumstances surrounding the incident differed amongst her initial statement to the police, the preliminary hearing, and at trial. Moore argues that the trial court ignored this and exercised manifestly unreasonable judgment in deciding his motion. Therefore, according to Moore, we should vacate the judgment of sentence

- 4 -

and remand for a new trial on his burglary and criminal trespass charges. Moore's Brief at 23, 44. We disagree.

When reviewing a challenge to the weight of the evidence, our standard of review is as follows:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support. Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.
>
> * * *
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013) (citations omitted). It is well established that a new trial may only be granted by the trial court where the verdict was so contrary to the weight of the evidence as to "shock one's sense of justice." *Commonwealth v. Fallon*, 275 A.3d 1099, 1107 (Pa. Super. 2022). For an appellant to prevail on a challenge to the weight of the evidence, "'the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.'" *Commonwealth v. Smith*, 146 A.3d 257, 265 (Pa. Super. 2016) (quoting *Commonwealth v. Sullivan*, 820 A.2d 785, 806 (Pa. Super. 2003)).

Notably,

> [a]n appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, **not of the underlying question of whether the verdict is against the weight of the evidence**.

***Clay***, 64 A.3d at 1055 (emphasis added). "Absent an abuse of discretion, the trial court's decision will not be disturbed." ***See Commonwealth v. Griffin***, 515 A.2d 865, 869 (Pa. 1986). An abuse of discretion "is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law." ***Commonwealth v. West***, 937 A.2d 516, 521 (Pa. Super. 2007). "The trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." ***Commonwealth v. Diggs***, 949 A.2d 873, 879–80 (Pa. 2008).

Here, the trial court explained its rationale for denying Moore's weight claim as follows:

> [T]he Commonwealth presented compelling evidence of [Moore's] guilt for the offenses of burglary and criminal trespass.
>
> The testimony of Ms. Johnson at trial was detailed and generally credible. Moreover, substantial parts of Ms. Johnson's testimony were corroborated by the testimony of her son, the photographs of her injuries, and the text messages between Ms. Johnson and [Moore].
>
> [Moore's] claim that Ms. Johnson's testimony was "unreliable and contradictory" is inconsistent with the record. In his post-sentence motion, [Moore] argued in part that it would be unreasonable to infer that [he] entered the home without permission. However, . . . the evidence of the text messages between [Moore] and Ms. Johnson corroborated that Ms. Johnson

made clear to [Moore] that he was not welcome to come into her home at the time he made entry.

[Moore] also argued in his post-sentence motion that the acquittals of [Moore] on the charges of strangulation and possession of an instrument of crime showed that Ms. Johnson's testimony was not credible. However, the split verdict plainly showed that the jury carefully considered all the evidence and credited Ms. Johnson's testimony in some but not all respects.

[Moore] further argued that Ms. Johnson's testimony that she went outside the house to "get some air" was implausible. However, the record shows that Ms. Johnson explained in her testimony at trial that she had decided to go outside so that her son would not overhear Ms. Johnson's conversation with Ms. Sissy and become scared.

None of the inconsistencies cited by [Moore] meaningfully undercut Ms. Johnson's credible account of how [he] forcibly entered her home without permission and assaulted her. In light of the compelling evidence of [Moore's] guilt, the verdict was not contrary to the weight of the evidence . . . .

Trial Court Opinion, 2/21/25, at 8-11 (excessive capitalization and citations omitted).

In reaching its decision, the trial court thoroughly and thoughtfully considered the evidence presented at trial. As to Moore's claim that Ms. Johnson's testimony was incredible, the court observed that there was other evidence which corroborated her testimony. Ms. Johnson's texts to Moore that night made it very clear that he was not welcome at her home. She wanted "him to go away." She told him she was going to call the police. Despite this, he came to her home, uninvited and unwanted. Additionally, photographs of Ms. Johnson's bruised arm showed that force was involved in the incident consistent with her testimony. Furthermore, the trial court correctly

recognized that the jury could find some testimony credible, especially given the corroborating evidence, and other testimony incredible. Our law has long recognized that the jury, as the trier of fact, is free to believe all, part, or none of the evidence. *See Commonwealth v. Clemens*, 242 A.3d 659, 667 (Pa. Super. 2020).

As to Moore's claim that certain inconsistencies in Ms. Johnson's testimony rendered the verdict shocking, we note that that our Supreme Court has explained:

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion.
>
> ***
>
> At trial, the jury [is] the ultimate fact-finder and the sole arbiter of the credibility of each of the witnesses. Issues of witness credibility include questions of inconsistent testimony and improper motive. A jury is entitled to resolve any inconsistencies in the Commonwealth's evidence in the manner that it sees fit .... *[I]nconsistencies in eyewitness testimony are not sufficient to warrant a new trial on grounds that the verdict was against the weight of the evidence*.

*Commonwealth v. Jacoby*, 170 A.3d 1065, 1080-81 (Pa. 2017) (citations and quotation marks omitted; emphasis added).

Notwithstanding this, the trial court acknowledged that there were inconsistencies in Ms. Johnson's testimony and considered them. But the court found they were not significant to the jury's decision. As the Commonwealth argued:

> These minor discrepancies, however, do not concern the elements of burglary or criminal trespass, and the jury did not need to resolve them in [Moore's] favor to convict. Rather, [Ms. Johnson] was consistent throughout her accounts that [Moore] was unwelcome, that she stepped outside, and that [Moore] grabbed her and forced his way in. Whether the outer door was locked, why she went outside, or why she called her neighbor are peripheral details which do not bear on whether [Moore] entered the home without permission.

Commonwealth's Brief at 13.

In sum, we conclude that the trial court did not abuse its discretion when it denied Moore's motion for a new trial. Moore's first issue fails.

In his second issue, Moore claims that his sentence was illegal because the trial court improperly considered his arrest record. Specifically, he argues that his arrest record was emphasized in both materials reviewed by the trial court prior to sentencing and at the hearing itself, including the Commonwealth's sentencing memorandum, the Commonwealth's argument at the hearing, and the presentence investigation report ("PSI"). Moore acknowledges that the trial court did not specifically reference Moore's arrest record in sentencing Moore, but it specifically noted that it considered these materials when it sentenced him. Moore's Brief at 34-38. In support of this claim, he relies on **Commonwealth v. Berry**, 323 A.3d 641 (Pa. 2024) and **Commonwealth v. Speights**, 53 EDA 2024 (Pa. Super. 2024) (*per curiam* order) (this Court remanded for resentencing where the trial court considered the Commonwealth's argument regarding the defendant's multiple arrests despite any specific reference thereto by the trial court).

Moore further maintains that, because this issue pertains to the legality of sentence, which can be raised anytime, we can consider his claim even though he did not raise it with the trial court. Moore's Brief at 39. According to Moore, this Court should vacate his sentence and remand for resentencing. *Id.* at 44. We disagree.

In *Berry*, our Supreme Court held that "[t]he court's use of arrest history as a sentencing factor is incompatible with settled law establishing that arrests, without convictions, simply 'have no value as probative matter.'" *Berry*, 323 A.3d at 655 (quoting *Commonwealth v. Jones*, 50 A.2d 342 (Pa. 1947)). Consequently, the Court vacated the defendant's sentence and remanded for resentencing.

Recently, this Court has held that a *Berry* claim (i.e. a clam that a sentencing court improperly considered a defendant's arrest history) does not challenge the legality of sentence. Instead, such a claim challenges the court's consideration of an impermissible factor which involves the discretionary aspects of sentence. *Commonwealth v. Walker*, 346 A.3d 379 (Pa. Super. 2025); *Commonwealth v. Davis*, 341 A.3d 808 (Pa. Super. 2025). Therefore, when raising a *Berry* claim, an appellant must adhere to the procedure for challenging the discretionary aspects of sentence.

Based on these recent precedents, we conclude that Moore's sentencing claim challenges the discretionary aspects of sentence and we will treat it as such.[3]

Critically, a challenge to the discretionary aspects of a sentence does not entitle an appellant to review as of right. Rather, the appellant must petition this Court for permission to appeal. *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010). Before reaching the merits of a discretionary sentencing issue, we must conduct a four-part analysis to determine:

> (1) whether the appeal is timely; (2) whether [a]ppellant preserved his issue; (3) whether [a]pellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [in accordance with 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.... [I]f the appeal satisfies each of these four requirements, we will then proceed to decide the substantive merits of the case.

*Commonwealth v. Colon*, 102 A.3d 1033, 1042-43 (Pa. Super. 2014) (quoting *Commonwealth v. Austin*, 66 A.3d 798, 808 (Pa. Super. 2013)).

_____

[3] We acknowledge that *Davis* and *Walker* were decided after Moore filed his appellate brief on June 20, 2025. Therefore, he did not have the benefit of these decisions but the Commonwealth, which filed its brief on October 20, 2025, did.

Furthermore, *Commonwealth v. Woodson*, 2024 WL 5205605 (Pa. Super. Dec. 24, 2024) (non-precedential memorandum), which Moore relies on for the proposition that his claim involves the legality of sentence, was decided prior to *Davis* and *Walker*.

- 11 -

Here, Moore timely filed his appeal. However, he did not preserve his sentencing claim for our consideration as required under *Colon*.[4]

To preserve a discretionary aspects of sentence claim, an appellant must raise the issue at sentencing or in a post-sentence motion. *Commonwealth v. Shugars*, 895 A.2d 1270, 1273, 1274 (Pa. Super. 2006). "Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"). As the trial court observed, Moore did not object to his sentence at the hearing or in his post-sentence motion. *See* Trial Court Opinion, 2/21/25, at 11. Accordingly, Moore failed to preserve this claim, and it is waived. Therefore, we do not address the merits of his *Berry* claim that the trial court improperly considered his arrest record when it sentenced him.[5]

Judgment of sentence affirmed.

---

[4] Additionally, because Moore construed his claim as a legality of sentencing claim, he did not include a Rule 2119(f) statement in his appellate brief, to which the Commonwealth objected. Commonwealth's Brief at 9. For this reason also, his discretionary aspects of sentence claim is waived. *See Commonwealth v. Griffin*, 149 A.3d 349, 353 (Pa. Super. 2016).

[5] Likewise, we will not consider Moore's argument relating to remand as another panel of this Court did in *Speights*.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/13/2026